# APPENDIX A.

ELIZA GREEN, WIDOW OF JOHN GREEN, DECEASED,

*vs.*

GOVE SAULSBURY, ADMR. C. T. A. OF JOHN GREEN,
DECEASED.

Orphans' Court, Kent County, March T. 1880.

*Jurisdiction of Orphans' Courts; rights of widow who
relinquishes dower under mistake.*

1. The Orphans' Courts in Delaware have equitable jurisdiction and
   equitable powers in all matters coming under the cognizance of
   such courts to which the application of equitable principles and
   powers are necessary and proper for their determination, where
   it is not necessary that the proceedings be by bill and answer.

2. The claims of creditors are not to be preferred to those of a widow
   who waives her assignment of dower by metes and bounds and
   elects to take the devises contained in the will in her favor in
   lieu of her right at law, unless the provisions in her favor are so
   disproportionate to the value of her dower at law as would
   amount to a fraud upon creditors.

3. A court having jurisdiction of the subject-matter of ordering a
   sale of a decedent's real estate to pay debts and of the pro-
   ceedings thereunder, and possessing equity powers with respect
   to the matters within its jurisdiction, may protect the rights of
   a widow who has relinquished her dower rights to permit the
   sale either by setting aside such relinquishment or by securing
   to her the benefit as against creditors of the provisions of the
   will in lieu of dower.

4. The rights of a widow who has relinquished her dower rights in
   order to permit a sale of the real estate to pay debts to have the
   provisions of the will in her favor in lieu of dower secured to
   her or to have her election set aside may be secured as well by
   petition and rule as by bill and answer.

5. A sum sufficient to raise the annuity provided by the will may be ordered to be invested in favor of the widow as against creditors of the estate where she relinquished her dower rights and elected to take under the will in reliance upon representations of the executors that the estate was solvent without knowing or having the means of knowing that it was insolvent.

6. The Orphans' Court in Delaware may determine the amount and the manner of investment of a sum to be invested to raise an annuity for a widow who relinquished her dower right to permit a sale for the benefit of creditors under the mistaken impression that the estate was solvent.

PETITION FOR RULE TO SECURE A WIDOW'S RIGHTS IN HER HUSBAND'S ESTATE.—Eliza Green, widow of John Green, late of Kent County, deceased, presented to the court a petition representing that her late husband executed a last will and testament and afterward departed this life leaving the will unrevoked. That the same was admitted to probate and that it devised to petitioner a dwelling-house in the town of Dover, during her natural lifetime, and bequeathed to her an annuity of $200, payable in equal semi-annual installments, during her natural lifetime, in lieu of her dower rights, and that the will directed the payment of the annuity out of the rents and profits of real estate, until it should be sold, and that after sale sufficient of the proceeds should be secured by mortgage on real estate to secure the annuity. That the administrator was unable to sell the lands in the condition they then were and petitioned for an order of court to permit the sale, and that petitioner believing that she could not be prejudiced by so doing in order to further a sale made her election in open court to take under the will and therefore surrendered her dower rights. That since the sale petitioner has learned that the proceeds will not be sufficient to pay all debts and leave a sum sufficient to raise her annuity and she therefore prayed a rule upon the administrator to show cause why he should

not invest a sum sufficient to raise such annuity, or that she be allowed to withdraw her election and file a waiver of her right to assignment of dower by metes and bounds and elect to take in lieu thereof an equivalent share of the proceeds of the real estate. The rule was issued in accordance with the prayer of the petition. The further facts sufficiently appear in the opinion.

*Eli Saulsbury*, for the plaintiff.

*Charles H. B. Day*, for the defendant.

THE CHANCELLOR.—John Green, in and by his last will and testament dated the 5th day of August, A. D. 1876, devised a house and lot, in Dover, to his wife during her natural life, and also gave her annually the sum of $200, to be paid in equal semi-annual installments. He directed his executrix to rent the farm on which he lived, during the minority of his youngest daughter, and out of the proceeds therefrom to pay semi-annually to his wife the sum of $100, which semi-annual payments were, during the minority of his said daughter by the clear intendment of his will, to constitute the said legacy of $200. After his said daughter should arrive at age, he directed his real estate, except the house in Dover, so as aforesaid devised to his wife, to be sold at public sale, and the sum of $3,333.33⅓, with interest payable semi-annually, to be secured on said lands by way of mortgage. The object of this investment was to secure the payment to his widow the legacy of $200 during her life in lieu of the payment of said sum out of the rents before the sale. The devise and bequest of the testator to his widow was expressly made in lieu and bar of dower. On the 25th day of March, A. D. 1879, the executrix in the will having previously renounced, Dr. Gove Saulsbury, administrator *c. t. a.* of the deceased, applied in due form to this court for an order to sell the real estate of

the deceased, or so much thereof as might be necessary for that purpose, for the payment of the debts of the deceased. The petition was granted, and an order made on the 24th day of September, A. D. 1879, for the sale of said real estate, except the house and premises in Dover, so as aforesaid devised to his widow. The administrator stated in his petition, among other things, as follows: "Should the widow of said deceased elect to take under the will of her said husband, the residue of the estate would be sufficient to pay debts, but as a considerable amount of the proceeds of the real estate would necessarily have to be applied to the payment of surety debts, which are liens upon said lands, it would require the sale of all the lands not devised to the said widow in lieu of dower, to satisfy and discharge the debts due from the estate." On the same day that the order was made, the widow appeared in open court and made her election to take under the will of her husband, which election, indorsed on the petition and signed by the widow, is as follows: " And now to wit, this twenty-fourth day of September, A. D. 1879, Mrs. Eliza Green, widow of John Green, deceased, voluntarily appears in open court and elects to take under the will of her said husband in lieu of dower in the lands of said John Green, deceased." By virtue of said order, the lands of the deceased, mentioned in said order, were sold by the said administrator and return of said sale was made by him to this court on the 24th day of March, A. D. 1880. On the same day the widow preferred her petition to the court representing and praying as follows: " That believing that she could not be prejudiced by so doing, and would in any event be paid fully the annuity aforesaid, in order to enable the administrator *c. t. a.* to sell said lands unencumbered by her dower rights therein, she made her election in open court to take under the will of

her husband. That the right to dower thereby surren-
dered was a full equivalent for the provision made for
her in said will, and the payment to her of said annuity
cannot and will not prejudice the rights of creditors of
her said husband, as her dower rights would have been
unaffected by liens against said lands with the exception
perhaps of a recognizance in this court amounting to
$2,214.60½, with less than one year's interest thereon.
That your petitioner has been informed and believes
that, owing to the existence of surety debts against the
estate of her said husband, the proceeds of the sale of the
lands sold under the order of this court will not be suffi-
cient to pay all debts and leave a fund sufficient to raise
her aforesaid annuity, she therefore prays the court to
issue a rule upon said administrator *c. t. a.*, to show
cause why he should not invest in the manner directed in
said will, or otherwise, the sum of $3,333.33⅓ out of the
proceeds of the sale of the lands sold under the order of
the court, with the interest thereon, payable to your
petitioner during her natural life, or to pay the said sum
of $3,333.33⅓ into this court for the purpose of raising the
aforesaid annuity of your petitioner.

Your petitioner further represents that her aforesaid
election was made under the belief that the estate would
be ample to pay her annuity and all debts against the
estate from the best information she could obtain from
other sources, as well as the statements in the petition for
an order to sell the lands for the payment of debts, and
by reason of said election said lands have been sold free
and discharged of dower for a much larger sum than
otherwise they would have brought. She therefore
prays the court in case she cannot obtain relief upon
the hearing of the rule prayed for on this petition, to
allow her to withdraw her aforesaid election and file a
waiver of the right to assignment of dower by metes and

bounds and elect to take in lieu thereof an equivalent
share of the proceeds of the sale of the real estate as in
ordinary cases of sales of real estate for the payment of
debts." The rule prayed for was granted by the court
and the question for us to determine is, Has this court
jurisdiction and authority to grant the relief sought by
the petitioner, or to afford any other relief which the cir-
cumstances alleged, if true, may seem to demand? To
determine this question it will be necessary, first, to con-
sider the jurisdiction and power of the Orphans' Court
under the Constitution and laws of this State. The ap-
plication is a novel one in our practice. No similar one
to my knowledge has ever been presented for the consid-
eration of the Orphans' Court in any county of this State.
It seems to merit careful consideration. In the first place
it is important to observe in this discussion that the three
counties upon the Delaware were formerly, and for a con-
siderable period of time, governed by the laws enacted
by the Province of Pennsylvania and the territories, which
territories were the three counties of New Castle, Kent,
and Sussex, on the Delaware.

At an assembly held at Philadelphia, in that Province,
the tenth day of the first month, March, 1683 (see Char-
ter and Laws of the Province of Pennsylvania from 1682–
1700, chapter 77, page 131), it was enacted, "That the
Justices of each respective county courts shall sitt twice
every year to inspect and take care of the estates, usage
and employment of orphans, which shall be called the
Orphans' Court, and sitt the first third day of ye week in
the first and eighth month yearly; That care may be
taken for those that are not able to take care of them-
selves." This was abrogated by William and Mary, King
and Queen, in the year 1693, and was re-enacted the same
year. At an assembly held at New Castle the tenth day of
the third month, May, 1684, it was enacted (chapter 156,

page 167, Pennsylvania Colonial Laws), "That Monthly and Quarterlie Sessions be held in every county in this Province and territories by the respective Justices; and that each Quarter Sessions be as well a Court of Equity as Law concerning any Judgment, given in cases by law capable of Triall in the respective County Sessions and Courts." This law was abrogated by William and Mary, King and Queen, in the year 1693, and re-enacted the same year, section 71, page 214, Pennsylvania Colonial Laws, and was supplied by law passed in the year 1701. See Bioren's Laws, volume 1, page 33. The act establishing the Orphans' Courts in this government is to be found in the first volume of the Laws of Delaware, chapter 30, page 87. The Act for establishing courts of law and equity, within this government, was enacted at the same session of the General Assembly, one of which courts was the Court of General Quarter Sessions of the Peace and Jail Delivery. Chapter 30 of the Act before referred to empowered the justices of the Quarter Sessions to hold the Orphans' Court. Under the Act establishing courts of law and equity in this government referred to, a Supreme Court was established to be composed of three judges, who, by section 7 of said Act were empowered " to hear and determine all and all manner of pleas, complaints, and causes in law or equity, which shall be removed or brought there from the respective General Quarter Sessions of the Peace, to be held for the respective counties of New Castle, Kent, and Sussex, by Writs of Certiorari, Writs of Error or Appeal, or from any other Court of Law or Equity in this government, by virtue of any of the said writs or appeal, after final judgment or decree shall be given in the said courts. By section 15 of said Act the county court of Common Pleas was established to be holden four times in every year, at the times and places where the General Quarter Sessions of the

Peace are directed, and by section 21 a Court of Equity was established to be held by the justices of the said respective county courts of Common Pleas four times a year, at the respective places and near the said times as the said Courts of Common Pleas are held, in any county in this government. This court, thus established and thus to be held, was not an appellate court or a court of errors as the Court of Common Pleas was, "to hear and determine all and all manner of pleas, plaints, and causes in law or equity, which, or might be brought there from the respective General Sessions of the Peace," but it was a court of original jurisdiction, and the judges of the Court of Common Pleas holding it were empowered and authorized to hear and decree all such matters and causes of equity as shall come before them in the said courts where the proceedings shall be by bill and answer as heretofore. It will thus be perceived from a careful scrutiny of these acts and their provisions, that the Court of Quarter Sessions, which was empowered to hold the Orphans' Court, possessed equity powers, and of course equity powers in respect to such matters as were the subjects of its jurisdiction, and to which equitable principles could be properly applied, with the right of appeal therefrom to the said Supreme Court and not to the Court of Common Pleas, which was empowered and authorized to hold a Court of Equity, where the proceedings were to be by bill and answer. No one can doubt that the subjects cognizable by the Orphans' Court thus established, and so to be holden by the judges of the Court of General Quarter Sessions, were subjects to which equitable principles could be properly applied. If so, it follows, necessarily, that in passing upon such subjects the judges of the General Quarter Sessions sitting as the judges of the Orphans' Court, possessed equitable powers and could exercise equitable jurisdiction, in respect to all subjects properly cognizable before them as such Orphans'

Opinion.

Court. The court derives its jurisdiction from the law creating it, and vesting the power of holding it in the manner described. In determining such matters as should come before it, the court had not only jurisdiction to entertain, but to hear and finally determine them without remitting a party interested to any other tribunal, or even to the Court of Equity established by said act, subject only to the right of appeal from its decisions to the said Supreme Court. The Orphans' Court thus established, and thus to be holden by the Court of General Quarter Sessions, was so continued to be holden by the said court until the adoption of the first constitution of this State in 1776, which provided in article 12, that, "the President and General Assembly shall, by joint ballot, appoint three justices of the Supreme Court for the State, one of whom shall be Chief Justice and a Judge of Admiralty, and also four Justices of the Courts of Common Pleas and Orphans' Courts for each county, one of whom in each court shall be styled Chief Justice." It will thus appear that the power of holding the Orphans' Courts was vested in the same judges as those which constituted the Courts of Common Pleas, but the jurisdiction of the Orphans' Courts was in no manner changed. Article 24 provided that "all Acts of Assembly in force in this State on the fifteenth day of May last (and not hereby altered or contrary to the resolutions of Congress, or of the late House of Assembly of this State), shall so continue until altered or repealed by the Legislature of the State, unless where they are temporary, in which case they shall expire at the time respectively limited for their duration." Article 13 of this Constitution was as follows: "The justices of the Courts of Common Pleas and Orphans' Courts shall have the power of holding Inferior Courts of Chancery as heretofore, unless the Legislature shall otherwise direct." What were these Inferior Courts of

Chancery which the Orphans' Court had theretofore been authorized to. hold ? It certainly was not the General Court of Equity established by virtue of the act hereinbefore referred to, wherein the proceedings were by bill and answer, because such Court of Equity was to be held by the Court of Common Pleas, who had also independently the power of holding Inferior Courts of Chancery. I take it, therefore, that by holding Inferior Courts of Chancery as heretofore, was meant that the Courts of Common Pleas. and Orphans' Courts were empowered to hear and determine the several matters within the respective jurisdiction of each according to the rules and principles both of law and equity as the same might be applicable to said matters ; and that having jurisdiction of a subject-matter before them, they had authority to. determine it and all questions in respect to it according to the very right of the matter, whether the ascertainment of that right. depended upon principles either of law or equity; and that their jurisdiction in such case was complete and perfect for its determination, and that the parties to any such cause were not to be turned over to any other tribunal for its adjudication. And here it may be remarked,. that there has never been theretofore, during the connection of the three counties on the Delaware with the Province of Pennsylvania, or, to use the language employed in the acts of that period of the Province of Pennsylvania and the territories, a separate Court of Chancery or other equitable tribunal, but all the courts of general jurisdiction exercised both legal and equitable powers ;. nor have there been such separate equitable tribunals since in Pennsylvania ; nor was there any independent equitable tribunal of general jurisdiction in this State or Colony after it ceased to be connected with the Province of Pennsylvania, until the act before referred to passed in the early part of the eighteenth century, the precise date

whereof is not however known, entitled, " An Act for the establishing courts of law and equity within this government." In those states where there are no courts of separate, exclusive equitable jurisdiction, as is now the case in most of the States of the Union, but where the same courts administer both law and equity, it is customary to speak of the law side and equity side of said courts, and such I take it, was the character of the Court of the General Quarter Sessions, Orphans' Court and Supreme Court, as first established in Delaware, and what is meant in article 13 of the Constitution of 1776, as Inferior Courts of Chancery, which the Court of Common Pleas and Orphans' Court should have the power of holding was nothing other in effect than the hearing and determining of matters before them on the equity side of said courts, when the application of equitable principles to their determination became necessary and proper. Under the Constitution of 1776, the same judges who held the Court of Common Pleas held the Orphans' Court for each county and determined all matters cognizable by them either according to legal or equitable principles, as the same might be applicable, but when deciding according to equitable principles and not upon legal principles, as distinguished from equitable, they exercised in the language of that constitution "the power of holding Inferior Courts of Chancery as heretofore." With such powers, and in this manner, were the Orphans' Courts in this State constituted and held until the year 1792, when a new Constitution for the State was adopted. This Constitution, section 15, provided that, "The judges of the Court of Common Pleas, or any two of them, shall compose the Orphans' Court of each county and may exercise the equity jurisdiction heretofore exercised by the Orphans' Courts, except as to adjusting and settling executors, administrators, and guardians' accounts, in which cases they shall have an appellate

jurisdiction from the sentence or decree of the Register."
Here the equity power of the Orphans' Court is distinctly
recognized and its equity jurisdiction made a part of the
Constitution.   What the equitable jurisdiction theretofore
exercised and which is continued by this section, I have
already endeavored to show, viz.: that it extended to all
matters cognizable before them and the determination of
which depended upon the application of equitable princi-
ples, and where the proceedings were not by bill and an-
swer.   In the latter case equity jurisdiction had theretofore
been exercised by the Court of Common Pleas, and not by
either the Court of Common Pleas or the Orphans' Court
holding Inferior Courts of Chancery.   The Constitution
of 1792, section 14, article 6, provides that, "The equity
jurisdiction heretofore exercised by the judges of the
Court of Common Pleas, shall be separated from the com-
mon-law jurisdiction and vested in a Chancellor, who shall
hold courts of chancery in the several counties of this
State."   The equity jurisdiction here referred to included
that exercised by the Court of Common Pleas theretofore,
when acting as an Inferior Court of Chancery, as distinct
from the Orphans' Court acting as an Inferior Court of
Chancery held by them as well as theretofore exercised by
the Court of Common Pleas when sitting as a Court of
Equity, as provided in section 21, chapter 54, of the Act
entitled, "An Act for the establishing courts of law and
equity within this government," hereinbefore referred to,
the powers of which courts of equity have hereinbefore
been mentioned, and which are more fully described in
said section.

The Court of Common Pleas continued to hold the
Orphans' Court and to exercise all the jurisdiction thus
given to the Orphans' Court under the Constitution of
1792, until that Constitution was amended in the year
1802, as follows, viz.:   "The Chancellor shall compose

the Orphans' Court of each county and exercise the equity jurisdiction heretofore exercised by the Orphans' Court, except as to the adjusting and settling executors', administrators', and guardians' accounts, in which cases he shall have an appellate jurisdiction from the sentence and decree of the Register." The effect of this amendment was simply to devest the Court of Common Pleas of the power of holding the Orphans' Court of each county, and of vesting the power of holding said courts in the Chancellor. The equitable jurisdiction of the Orphans' Court was expressly reserved, although it was to be exercised by the Chancellor who composed said courts with appeal from the Orphans' Court thus composed in the matters of its original jurisdiction to the Supreme Court. Thereafter the Chancellor composed the Orphans' Court, exercising its equitable jurisdiction as distinct from the jurisdiction which he exercised as Chancellor under sections 1 and 14, article 6, of the Constitution of 1792. The power of the Orphans' Courts in the respective counties of this State, after the adoption of the Amendment of 1802, as aforesaid, continued to be exercised by the Chancellor ¦composing said courts, until the adoption of the present Constitution of this State in 1831. That Constitution provides, section 10, article 6, that the "Orphans' Court in each county shall be held by the Chancellor and the Associate Judge residing in the county, the Chancellor being president." And "this court shall have all the jurisdiction and powers vested by the laws of this State in the Orphans' Court." This court has all such jurisdiction and power now. The question then arises, What is that jurisdiction and what are those powers? We have already seen that the original Court of General Quarter Sessions holding the Orphans' Court had from the beginning equitable jurisdiction and powers. That the Orphans' Court, when held by the judges,

of the old Court of Common Pleas, possessed equitable jurisdiction and powers. That by the Constitution of 1792, the judges of the Court of Common Pleas, or any two of them, composing the Orphans' Court of each county, might exercise the equity jurisdiction theretofore exercised by the Orphans' Court, except as to the adjusting and settling executors', administrators' and guardians' accounts, in which case they should have only appellate jurisdiction from the sentence or decree of the Register. This equitable jurisdiction under the Constitution of 1792 was both original and appellate, for that Constitution provides that appeals may be made from the Orphans' Court in cases where that court has original jurisdiction to the Supreme Court, whose decision shall be final. This equitable jurisdiction was continued in the court by the amendment to that Constitution in 1802, when the powers of the court were vested in the Chancellor, and this equitable jurisdiction and these equitable powers under the laws of this State, were, by the present Constitution of the State, vested in the Orphans' Court as now constituted. In fact there has been no period since the first establishing the Orphans' Court in this State, when that court has not possessed and exercised equitable jurisdiction and powers which may properly be termed original. In reference to what therefore may this equitable jurisdiction and these equitable powers be exercised? Reasonably we should suppose in reference to all matters coming under the cognizance of said courts to which the application of equitable principles and powers are necessary and proper for their determination, unless there be any case where the exercise of such jurisdiction and such powers have been prohibited. Is there any such prohibition in respect to the case before us? This court has jurisdiction to hear and determine the application of the administrator *c. t. a.* of John Green,

deceased, for an order for the sale of his real estate for
the payment of his debts.  It had the authority to hear
and consider the election of the widow to take under the
will of her husband and not her dower at law.  The
facts stated in the petition of the administrator are before
the court, as are also the circumstances under which she
made her election as stated in her present petition to the
court.  Has any court the power to afford her the relief
she asks, or granting her prayer for leave to withdraw
her election, or to have the benefit of the devise and be-
quest made in her favor in the will of her husband, which
benefit was the inducement to her of waiving her right of
dower at law?  If this court should be satisfied that in-
justice and wrong would be done the widow of holding
her to her election without her being secure in the enjoy-
ment of that benefit, has it or has it not the power to
afford her the relief which she seeks, or must the court
dismiss her petition and leave her either remediless or to
the privilege, if she has it, of seeking for relief by a bill
in equity?  Has she a cause for equitable relief, and if
so, can this court afford that relief?  We have seen that
the Orphans' Court has, and always has had, equitable
jurisdiction and powers.  We have indicated to what
matters the exercise of that jurisdiction and the exercise
of those powers may be applied.  We have not been able
to see any prohibition upon such exercise in respect to
the matters before us, either in the Constitution or laws
of the State, and hence the inquiry becomes important
whether there is anything in the nature and character of
the application, or of the mode and manner and means
by which the relief sought can be afforded, which pre-
cludes this court in the exercise of its equitable jurisdic-
tion and powers from affording such relief, and to this
question I now address myself.  And first, in what posi-
tion does the petitioner stand before the Court?  She is

the widow of John Green, deceased. Surviving him,
she was entitled by law to one third of his real estate,
legal and equitable, as her dower therein during her nat-
ural life. She stands before the court in a different
light from that of a mere legatee. She is not as a legatee
a mere object of the bounty of the deceased. She is en-
titled to be regarded in the light of a purchaser. She
surrenders a clear legal right and gives a valuable consid-
eration for the benefit which she claims under the will.
The surrender of her rights at law to dower in her hus-
band's real estate in consideration of the devises and be-
quests contained in his will, has all the merits of a con-
tract, and has by some courts been treated in the light of
a contract between her and her husband. It is clear that
she would not be subject to abatement of the bequests
made to her in favor of mere legatees, and if the facts
stated in the petition be true, there is no reason why the
bequest should be subject to abatement in favor of cred-
itors of the deceased, the truth of which facts this court
has the power to ascertain, if it has the power to enter-
tain the application at all. The petition states in sub-
stance that by her release of dower the real estate sold
by the administrator sold for an amount in excess of that
for which it would have sold if her right of dower by
metes and bounds had not been released by her election
equal to the amount which she claims shall be reserved
out of the proceeds of the sale, and not be applied by
the administrator to the payment of debts during her life-
time, but invested so as to raise the amount of her an-
nuity. If so, no creditor of the deceased would or could
sustain loss, but would in fact be benefited, because
such excess of sale caused by her election to take under
the will would, after her death, be applicable to the pay-
ment of any unsatisfied debts against her husband's es-

tate.　If, however, she is to be held to her election, and to be subjected to a diminution of her annuity, she will be the loser to the amount of that diminution, although she surrendered a valuable consideration for her whole annuity, and thus the creditors would receive the benefit to which they would not have been entitled but for her election.　Would this be just or equitable as between her and the creditors.　At most, the payment of their claims would only be postponed to a future period, while she would suffer a present and a continuing loss.　It may be said that a testator is bound to be just before he is generous, and that creditors who have legal rights are not to be postponed to the mere objects of the testator's bounty. The petitioner, if the facts alleged in the petition are true, is not affected by this principle.　She was not the object of the testator's bounty.　She was a purchaser for a valuable consideration, the surrender of her rights to dower at law in his real estate, in consideration of the devises and bequest in her favor contained in the will. She cannot be deprived of the benefits secured to her by the will by the claim of any one not possessing an equity superior to her's.　It has been decided again and again, that a widow, under such circumstances as exist in this case, is not subject to the abatement of a legacy in her favor in relief of mere legatees, and I hold it to be true that the claims of creditors are not to be preferred to those of a widow who waives her assignment of dower by metes and bounds and elects to take the devises contained in the will, in her favor, in lieu of her right to dower at law, unless where the provisions made for her in the will in her favor in lieu of dower is so disproportionate to the value of her dower at law as would amount to a fraud upon creditors.　I shall do nothing further than to quote from two adjudged cases in support of these positions

and append in a footnote* to this opinion, a reference to a few cases where the learning upon this subject may be consulted. In the case of *Isenhart* v. *Brown*, 1 Edw. Ch. 411, 6 L. ed. 190, it was decided by the Vice-Chancellor of New York, that a bequest in lieu of dower, and the acceptance of the same, amounts to a matter of contract and purchase, and the wife is to be paid the bequests in preference to other legacies and without abatement. In this case the Vice-Chancellor says, "the legacies given to her (the widow) by this will are partly specific and partly pecuniary, and they constitute the provision made for her by the testator in lieu of her right of dower in his estate. It is the price put by the testator himself upon that right and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes the purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish; and if she agrees to the terms she relinquishes it and is entitled to the price. It is, therefore, a matter of convention or contract between them, and what she thus becomes entitled to receive is not by way of bounty, like other general bequests, but as purchase money for what she relinquishes and which consequently must be paid in preference to other legacies." Then, after reviewing a number of cases on the subject the Vice-Chancellor says : " Considering all these cases I am bound to regard the law as settled, that under circumstances like the present a widow is entitled, after

---

* NOTE.—*Butricke* v. *Broadhurst*, annexed notes, 1 Ves. Jr. 171; *Wake* v. *Wake*, 1 Ves. Jr. 335; *Burridge* v. *Bradyl*, 1 P. Wms. 127; *Blower* v. *Morret*, 2 Ves. Sr. 420; *Devenhill* v. *Fletcher*, 1 Ambl. 244; *Heath* v. *Dendy*, 1 Russ. 543; *Isenhart* v. *Brown*, 1 Edw. Ch. 411, 6 L. ed. 190; *Hall's Case*, 1 Bland, Ch. 205, 17 Am. Dec. 275.

payment of the debts, to the whole provision which the husband chooses to make for her by his will in lieu of dower, in preference to all other legatees who are consequently to be postponed where there is a deficiency of assets. Of course the debts must be paid before she can be entitled even to specific legacies." I quote these last observations of the Vice-Chancellor not to adopt them, but to express my dissent from them so far as they convey the idea that a widow is not entitled to the provision made for her in a will in lieu of dower, until after payment of the debts of the testator, and I say "of course" this is not true where the value of her right of dower relinquished in consideration of the devises and bequests in the will is of equal value with that of such devises and bequests. And why? Because the right of dower which she relinquished in her husband's real estate, was not subject to, and could not be made subject to, the payment of the debts due by her husband, and his creditors could have no claim upon the proceeds of the sale arising from lands to which she was entitled as dower, without her relinquishment of dower thereon, and she taking under the will of her husband, property only equal in amount in value to the right of dower as relinquished, and taking as a purchaser and not through the bounty of the testator, it would be inequitable to postpone her rights under the will to the claims of her husband's creditors. In support of the view thus presented I refer to *Margaret Hall's Case*, 1 Bland, Ch. 203, 17 Am. Dec. 275, in which it was decided that a widow who elects to take the estate devised to her in lieu of dower is to be deemed a purchaser for a fair consideration to the value of her dower, and must have her claim sustained as a lien to that extent in preference to creditors. As this case is very similar in its facts to the one before us, I will give it in full. The case is reported thus: "This case arose

upon a creditor's bill filed on the 5th of October, 1825, by George Mackubui and Margaret Hall, the widow and executrix of Joseph Hall, deceased, against his devisees, Samuel Matthews and others, alleging that his personal property was insufficient to pay his debts, and praying that his real estate might be sold for that purpose. A decree was passed on the 30th of June, 1826, for the sale of the realty accordingly; and the trustees reported that he had made sale of a part of it, which was finally satisfied on the 1st of March, 1827. On the 1st of March, 1827, the plaintiff Margaret, by her petition stated that her late husband had, by his last will, devised to her a large portion of his estate, to hold a part during her life and another part for a term of years; that she had elected to take under the will of her husband immediately after his death when she was unacquainted with his affairs; but that it is now ascertained that the claims against his estate will absorb so much of it as, if paid to her exclusion, will deprive her of all benefit intended by the will, and leave her in a much worse situation than if she had rested altogether upon her common-law rights. And therefore, as her election was improvidently made, and at the time when she was destitute of the information which alone could enable her to act knowingly upon the subject, she prays that it may be annulled that she may be allowed the value of her dower, or be relieved according to the nature of the case, etc." . . .
The Chancellor said : " The will of the deceased husband of this widow lay before her and presented to her a choice between the estate therein bestowed and that given by the law. In her election to take under the will there is no apparent room even to suspect fraud, nor has the existence of any been intimated; and it is difficult to perceive how there could have been any mistake. But supposing it possible to show that a mistake had occurred,

I should require from her a strong and clear case of mis-apprehension. She has heretofore formerly made her election in the manner prescribed by law, and has solemnly re-affirmed that choice by bringing this suit. An election thus deliberately made, repeated and adhered to, ought not to be lightly shaken or easily annulled. This widow must therefore be held firmly bound by her election, and can have no relief but such as may be altogether compatible with the choice she has thus made. A devise which is merely of the nature of a donation or that appoints persons to take as heirs, in place of those designated by the law, must certainly be considered as void against creditors. But a devise in lieu of dower is one of a different character and of much higher merits. It discharges a highly favored debt due from the testator; it relieves his real estate from a lien imposed by law in favor of his wife in preference to all others with which he himself could have encumbered it by any contract of his own. In the language of the Act of Assembly, a widow electing to take under the will of her husband is to "be considered as a purchaser with a fair consideration." It is clear, therefore, that this devise is fraudulent as against creditors, only as far as it exceeds the value of the dower in lieu and discharge of which it was given and has been accepted. The creditors have associated themselves with the widow and devisee of the deceased, and have asked to have the real estate sold for the payment and satisfaction of all. But these creditors now, it seems, propose to have their claims first satisfied in preference and exclusion of the devise to the widow. They who are the widow's opponents would thus bind her to her election to take under the will which satisfied her claim that had a preference over theirs; and yet they would leave her to take by that devise nothing, or less than the amount of her legal claim. This cannot be

allowed.   They who ask equity must do equity.   These
creditors must either permit the widow to take the whole
amount under the will, as is her choice, or allow her to
obtain full satisfaction for her dower; because to the
value of that at the least, she is both at law and in equity
"a purchaser with a fair consideration," and to that ex-
tent therefore the devise must be sustained.   The widow
is clearly entitled to one or the other, either the devise or
the dower, and since her taking the whole of the subject
devised, which was and is her choice, has been objected
to, she must be allowed to take as devisee to the full
value of her dower which she has relinquished, but no
more.

The Chancellor made the following order, viz.: "There-
fore, it is ordered that the said Margaret Hall be, and she
is hereby allowed, one-seventh part of the proceeds of
the real estate in the proceedings mentioned in bar and
satisfaction of all that portion of the real and personal
estate devised to her by her late husband, Joseph Hall,
and which property so devised she had elected to take in
lieu of her dower."

This case was decided in Chancery for the reason I
suppose that, under the law and practice of Maryland,
the Court of Chancery alone had jurisdiction to award a
sale of the realty of a deceased person for the payment of
his debts where the sale of the realty became necessary
for such purpose.   The course to be pursued was by a
creditor's bill against the devisees and others claiming the
land when a decree was made for the sale of the land.
Of course it became necessary to make return of the sale
to the court which had made the decree for the sale, and
every claim upon the proceeds of sale had to be presented
to that court, and might be as was done in this case, by
petition by the claimant.   The principle applicable in
this respect to the present case and to all similar cases, is,

that the court vested with the power of ordering the sale, and to whom a return of the sale must be made, and which has authority in respect to confirming or refusing confirmation of sale, and of course in case of refusal of confirmation to order a return of the purchase money to be made to the purchaser—in short the court having jurisdiction of the subject-matter of sale, and the proceedings thereunder, and more especially when such court possesses equitable powers in respect to matters within its jurisdiction, has authority as a necessary incident to the exercise of its jurisdiction, to pass upon all matters either legal or equitable, necessary and proper to a just determination in respect to those matters, unless there is some limitation to the exercise of its powers imposed by law, or unless it finds itself inadequate to do complete justice between contending parties, and can remit such parties to some other tribunal where justice can be more effectually administered.    In the case before us the claim of the petitioner being just and equitable in its character, so far as not to be prejudiced by her election, this court ought not to subject her to the expense and delay of making application by a bill to the Chancellor for relief in equity if this court can itself grant the relief to which she is entitled.    And why can it not?    The extent of the equity claimed would be the same in either court.    The relief sought may be afforded as well upon petition and rule as by bill and answer.    In the case already cited in Bland, relief afforded to the widow was upon petition after sale made, and the bill mentioned in that case in equity was simply to obtain an order for the sale of the lands, which, under the law of Maryland, and the practice in the courts of that State, seems to have been necessary, although not necessary where the question related simply as to the application of or right to the fund.    In the present case the order of sale was obtained, not on bill in equity after

answer thereto by persons claiming the real estate as in the case in Maryland, but upon petition to the Orphans' Court, having jurisdiction to make the order, and upon notice to the heirs or persons interested in the real estate. The proceeds of sale being in the hands of the administrator subject to the order of the court and to the payment of the debts of the deceased, so far as the fund shall be ascertained to be applicable, can there be any doubt as to the right of the court to determine whether such fund is subject to any equity or rightful claim paramount to that of creditors? The measure of proof would be the same in one court as in the other, and the mode and manner of proof is not necessarily dissimilar. I am, therefore, of the opinion that this court has ample authority to determine the questions arising upon this petition; and that it is the only tribunal which ought to pass upon those questions. Whether it ought to grant either one of the prayers of the petitioner depends upon the truth of the facts alleged therein. Some of those facts we know by the record. We know that the sale was made, the amount of the sale, that it has been returned to this court by the administrator, the statements made in the petition of the administrator for obtaining the order of sale, the election of the widow to take under the will indorsed on the petition, and there is nothing in the case to show any fraud on her part, or on the part of any one else, and we have no reason to believe from anything before us that she had, or could have had, any knowledge in respect to the condition of the estate other than that obtained from the petition upon which the order was made. Did she, by electing to take under the will of her husband and thereby waiving the assignment of her dower by metes and bounds, surrender or give an equivalent for the interest on the sum of $3,333.33\tfrac{1}{3}$, which sum she now asks may be invested or secured so that the semi-

annual interest thereon be paid to her during her life according to the direction of her husband in his said will.

There is no doubt that in a case arising in the Court of Chancery in which the right to elect between two interests, or to revoke an election already made and to be remitted to rights waived upon election, that the court would feel itself compelled to decide in conformity to the long train of decisions on the subject, that before a party can be compelled to elect, such party would be entitled to be informed fully in respect to his or her interests and to the situation of the estate or funds in respect to which they might arise, and for that purpose to have accounts taken in that court. According to the English law, and the same is doubtless true in this country wherever the question has arisen in Chancery, before a widow can be compelled to make her election between her right of dower at law and a devise in lieu of dower, she is entitled to be fully informed of the comparative value of the two rights or subjects-matter of choice. This principle is one of such obvious fairness that I know of no case in which the contrary thereof has been judicially held. Other circumstances, however, besides an accurate knowledge of the comparative value of the two things which are the subject of election may be sufficient to bind; but, as has been well remarked, these circumstances (whether arising out of original intention, acquiescence in the acts of others, or the effect of acts of the party having the right of election on the interest of third persons), must be so infinitely varied and modified in different cases that no rule applicable to all can be laid down; each must be determined on its own particular grounds. In the case of *Wake* v. *Wake*, 1 Ves. Jr. 335, it was decided that the receipt of a legacy and annuity under the will, for three years, did not prevent her right of election being presumed not to have acted with full knowledge which would bind her.

I conceive it to be settled law, that acts done by a party before he or she is fully informed of his or her rights will not, generally speaking, amount to an election; and where an election has in fact been made, as in this case, without full information and without the means of full information, I conceive it would be inequitable to hold a widow to such an election if no other relief than allowing her to revoke it could be afforded. And if such revocation, under proper circumstances, can at all be made as the authorities show, it certainly ought to be made in the tribunal in which the election was made. What jurisdiction has any other court to allow a revocation to be made? As to revocation itself, what authority would a Court of Chancery have to compel this court to allow it? An appeal from this court does not lie in the Court of Chancery, but only to the Superior Court when the opinion of the judges composing the Orphans' Court are opposed. Now, in a case where revoking an election ought to be allowed in order that justice and right should be done, and this court should refuse to allow such revocation, I submit that the Court of Chancery would be powerless to afford relief. This is the only tribunal in which such revocation could be made, and that the right of revocation does exist where equitable circumstances demand it, cannot be questioned in view of the uniform rulings of courts upon that subject. In this case the widow made her election in this the only tribunal in which the right of election is provided for under the statute. The order for sale free of dower was made by the court, the sale has been returned to the court and it now appears that the election was made by the widow without full knowledge of the condition of the estate as she alleges, and without the opportunity for such knowledge; but upon the faith of the statements contained in the petition made by the administrator upon which the

order of sale was obtained, statements doubtless believed at the time by all parties to be true. The proceeds of sale are in the hands of the administrator. Do not the equities of the widow attach to those proceeds and fasten them as against creditors in the hands of the administrator during the life of the widow? And if so, cannot this court make an order that the administrator shall reserve out of the clear residue of sales a sum sufficient to satisfy the equitable lien upon them, and apply only the balance of said proceeds in discharge of the debts of the deceased during the lifetime of the widow? I think it may. The principle of the sum so reserved would, however, after the death of the widow, belong to the administrator, and be in his hands to pay any unsatisfied debts of the deceased, and in case there were no such debts, to be paid by him to the parties respectively entitled to receive it under the will of the deceased. It may be true that the administrator and the widow may have a right, either separately or conjointly, to apply to the Court of Chancery for an order as to how, in what manner, and in what funds, the said sum so reserved by order of this court may be invested, treating it as a fund burdened with an equity, or in the absence of any order of any court having jurisdiction in respect thereto, I see no objection to its being retained by the administrator and safely invested by him as such administrator to raise the annuity for the widow during her life, and afterwards to be applied according to law. Nor do I see any objection to this court making such order, the whole subject-matter of the sale and the rights of the parties being before it. It is true, no statute of the State expressly gives the authority to this court to make the investment, but the court being one of equity powers in respect to any subject-matter within its jurisdiction, and calling for the application of equitable principles, and in view of the

positive legislation of the State in respect to securing the rights of the widow in the proceeds of her husband's real estate, when the same shall be sold for the payment of his debts, she waiving her right to an assignment of dower therein by metes and bounds, and electing to take in lieu thereof the interest on one third of the proceeds of sale, and the statutory authority of the court to secure such third part so that the interest may be paid to her during her life, I do not think that this court would be transcending its fair, legal and constitutional authority to order a proper investment of the sum, but it would be acting within the spirit and intention of the law in such cases in granting the prayer of the petition in this respect. "*Qui hæret in litera, hæret in cortice.*"

Where a court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them. *Elliott* v. *Peirsol*, 26 U. S. 1 Pet. 340, 7 L. ed. 170. I take the principle to be this, that where a court has jurisdiction of the subject-matter, having the right to decide every question occurring in the cause, the correctness of its decision in respect to any such question can only be inquired into upon a writ of error or upon an appeal therefrom. In this case no writ of error would lie, and an appeal, and that to the Superior Court only for the county, in case the opinions of the judges composing this court should be opposed, could be taken. This should only make us the more careful of the propriety and correctness of the decision we shall make, but it should make us equally careful not to avoid the exercise of a jurisdiction which

we rightfully possess, and not to remit the determination of a question to another tribunal possessing no jurisdiction, or at best only a doubtful jurisdiction, in respect to it either original or appellate.

If it be true that a widow is entitled to revoke her election, to take the devises and bequests in her husband's will in lieu of her legal right to dower in real estate, and if such revocation of election can only be made in the court in which the election was made; and if it be true that the widow should be remitted either to her right at law, as if such an election had never been made, or should be compensated by a just equivalent out of the proceeds of the sale of the real estate under an order of sale for the payment of debts,—it would seem that the court in which the election was made, or the right to revocation of election or of just compensation instead thereof, is, and should be, the proper court to ascertain and determine the amount or extent of that compensation. Such amount being thus ascertained and determined not being a sum awarded absolutely in gross as absolute property, but only the annual interest upon such sum, it would be proper to preserve the principal sum for the benefit of those who might be entitled to it after the interest thereon should be no longer payable to the widow. If the court in which the proceedings for the sale of the real estate were, was necessarily the Orphans' Court, and if that court possesses, as we have seen, equitable powers, and if it has jurisdiction of the cause before it, and if, as we have seen, that a court having jurisdiction of a cause has a right to decide every question which occurs in such cause, it would follow reasonably that the Orphans' Court is the proper tribunal to decide in respect to the safety and security of such principal sum, and that, if in the judgment of the court the investment of the principal sum should be necessary or proper for such security or-

safety, then said court would have the authority and should order the investment. If the petitioner in this cause is entitled in law or equity to interest on such share of the proceeds of sale of the real estate of her husband as would be an equivalent for her dower, she not being debarred thereof by her election, she would, I submit, be brought within the spirit and equity of the Act of March 26, 1869, and this court would be invested with the authority contemplated in that Act. The Act consists of one section (see Code, 557), which is as follows: "That hereafter upon the return of a sale of real estate by any executor or administrator to pay the debts of the decedent, pursuant to section 4 of chapter 90 of the Revised Statutes of this State, in cases in which the widow of the decedent is entitled to interest on a share of the proceeds of sale as an equivalent for her dower, the purchaser may, at his election, either secure such share pursuant to the provisions of the said section, or he may pay the same into the Orphans' Court, in which case the said share shall be invested or otherwise secured under the direction of the said court for the benefit of the parties interested in the same."

In this case why may not the administrator, who himself, by leave of the court, has in fact become the purchaser, pay the sum which the court may adjudge equitable, into the court, to be invested or otherwise secured under the direction of the court for the benefit of the parties interested in the same?

It appears by the return of sale made by the administrator that the sale of the real estate amounted in the aggregate to the sum of $11,946.00, one third of which would be the sum of $3,982.00, the annual interest upon which would be $238.92, which sum annually during her life would be more than an equivalent for the annual interest on the sum of $3,333.33⅓—to wit, $200—which

the petitioner asks may be secured to her.  The petition of the widow states that the real estate of the deceased in which she was entitled to dower was not incumbered by any lien paramount to her claim, unless perhaps the lien of a recognizance in this court amounting to $2,214.-60½, with less than one year's interest thereon.  If the amount so due on said recognizance be deducted from the aggregate amount of the sales at the time of her election to take under the will, it would leave a balance of about $9,598.54, one third of which would be $3,199.-51⅓, the annual interest on which would be $191.97, being $8.03 less annually than the sum of $200, to which the widow claims to be entitled.  The deceased also, in his will as a part of the consideration for his wife's relinquishment dower, devised to her a house and premises in Dover.  What would be a fair annual rental for said house and premises we do not know, nor can we tell whether two third parts of such rental value should be considered in determining the proportion of the amount of sales which should be reserved for the benefit of the widow, nor do we know whether the amount of said recognizance should be taken into consideration by us as at present advised.

These matters are subject to proof which may hereafter be presented to us, and in respect to which no opinion is expressed further than to say, that the court would not be warranted in concluding that the devise and bequest to the widow in lieu of dower was a fraud in respect to creditors, or so unjust to them as to justify the court in any manner disturbing or lessening it.  I think, therefore, that the widow should amend her petition and rule by leave of the court, so as to make the creditors of John Green, deceased, co-defendants with the administrator in said rule, and that the rule should be served upon the creditors commanding them to ap-

26

pear in court by a certain day therein to be named, and show cause why the prayer of the petition should not be granted, so far at least as said prayer relates to the invest-ment of the sum of $3,333.33⅓, under the order of this court. I express no opinion at present in respect to the alternative prayer of the petition for leave to revoke the election already made under a misapprehension of facts, other than to say that that part of the prayer should not be allowed if that which is equitable and right toward the widow can be otherwise effected.